IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SUSAN KAUTZER,

                Plaintiff,              OPINION AND ORDER

    v.

                                                20-cv-511-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Susan Kautzer seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act. On appeal, plaintiff advances three arguments: (1) the Administrative Law Judge ("ALJ") erred in assessing the opinion evidence in the record; (2) the ALJ did not comply with Social Security Administration guidance in assessing whether Kautzer's chronic fatigue syndrome ("CFS") met or medically equaled a listing level requirement; and (3) the ALJ failed to accurately evaluate Kautzer's residual functional capacity ("RFC"), primarily because of an allegedly flawed credibility assessment.[1] After consideration of these arguments, the court concludes for the reasons discussed below that the ALJ did not err in her consideration of Kautzer's application, and will affirm the decision of the Commissioner.

---

[1] In her brief, plaintiff presented these arguments in a different order, but the court has rearranged them here for clarity.

BACKGROUND[2]

On August 25, 2016, Kautzer filed an application for supplemental security income, alleging a disability onset date of February 13, 2016. (AR at 108.) After her application was denied initially and on reconsideration, she requested a hearing before an ALJ, which was held on March 5, 2019. (AR at 108.) She was represented at the hearing by attorney Dana Duncan. (AR at 108.) In her pre-hearing brief, she alleged that she suffered from sensitization syndrome, somatic dysfunction, and fibromyalgia, but did not allege that any listing had been met. (AR at 539-40.) Of note to this appeal, she did not allege that she suffered from CFS. (AR at 539-40.)

On February 13, 2016 -- Kautzer's alleged onset date -- Kautzer suffered an accident at work which allegedly caused a lower back injury. (AR at 601, 1087.) She was referred to physical therapy by Scott Brown, PA-C, and the following month was cleared to return to work. (AR at 601, 946.) After several physical therapy sessions she continued to report pain (AR at 601), although in May of 2016 Heather Curtiss, M.D., noted that her alleged pain appeared to be out of proportion with the objective exam findings (AR at 879).

On November 21, 2016, state agency doctor Ronald Shaw, M.D., reviewed Kautzer's medical record as a part of the agency's initial disability determination. He found that Kautzer had two severe impairments, sprains and strains (all types) and disorders of the back -- discogenic and degenerative, but found that her impairments did not meet or equal a listing-level impairment. (AR at 187-88.) As for Kautzer's RFC, Dr. Shaw concluded that she could occasionally lift and/or carry 20 pounds, frequently lift and/or

---

[2] The following facts are drawn from the administrative record, which can be found at dkt. #17.

carry 10 pounds, could stand and/or walk for a total of about 6 hours in a workday, and could sit for a total of about 6 hours in a workday. (AR at 189.) There was no evaluation of Kauzter's mental RFC at the initial level.

On January 25, 2017, PA-C Brown completed a physical work capacity and pain questionnaire for Kautzer at her request. (AR at 1079-86, 1096-99.) In this questionnaire, Brown opined that Kautzer was incapable of lifting 10 pounds, could sit and stand/walk less than 2 hours in an 8-hour workday, could not grasp even light items, would be absent more than four times a month, and that even picking up and holding a phone would result in significant muscle weakness. (AR at 1079-86.) Brown noted that he had treated Kautzer periodically for the past ten years; however, the last time he saw her was September 19, 2016, and he explained in the evaluation that he was not active in the evaluation or management of Kautzer's concerns. (AR at 1084, 1096.) Further, he explained that the physical exam he conducted was "quite limited" and that he had "to rely on her answers as being accurate" for the purposes of the questionnaire. (AR at 1097.)

On March 2, 2017, state agency doctor George Walcott, M.D., reviewed Kautzer's medical record on reconsideration. (AR at 201.) Like Dr. Shaw, Dr. Walcott also found that none of Kautzer's impairments met or equaled a listing-level impairment and arrived at the same RFC finding as Dr. Shaw. (AR at 198-201.) At reconsideration, a consultative examination was ordered because Kautzer was "alleging memory and focus problems" but the record at that time was "not sufficient to support a decision on the claim." (AR at 197.)

This consultative examination took place on April 22, 2017, with Joseph F. Roe,

3

Psy. D. (AR at 1087-91.) During this exam, he conducted various tests to measure Kautzer's mental abilities, the results of which were largely normal, as well as more generally speaking with Kautzer regarding her alleged impairments. Based on his evaluation, Dr. Roe concluded:

> The claimant can understand, but may not remember or carry out simple instructions. She also has problems focusing and paying attention and would not maintain a normal work pace. She would not get along with supervisors or coworkers as she is very short tempered and has no patience at this time. She would not recognize when changes are needed and if she did recognize that change is needed in the work environment would not be able to do them because of her fatigue and chronic pain. If awarded disability status this person does not appear to need assistance handling her funds.

(AR at 1091.) There is no indication that Dr. Roe examined any of Kautzer's medical records or based his conclusions on anything other than Kautzer's complaints. (*See* AR at 1087-91.)

On May 4, 2017, state agency psychologist Lisa Fitzpatrick, Psy. D., completed a mental residual functional capacity assessment at the reconsideration level. (AR at 202.) She concluded that Kautzer was able to understand/remember simple instructions, but unable to consistently remember/understand moderately to highly complex/detailed instructions; was able to maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision, but that her symptoms would preclude persistence at more complex tasks over time; was able to tolerate the minimum social demands of simple-task settings, but would not be able to tolerate sustained contact with the general public; and was able to tolerate changes in routine, avoid hazards, travel independently, and make/carry out simple plans. (AR at 203.)

Overall, the medical record does show that Kautzer reported intermittent pain between 2016 and 2017. (*See* AR at 543, 591, 631, 701, 1064, 1123.) However, although she was referred to the pain clinic multiple times (AR at 1194), she did not follow through until April of 2018. (AR at 1193-200.) The record shows other examples in which Kautzer did not pursue full treatment options: (1) she reported that a muscle relaxant helped her pain, but she did not take it (AR at 1199); (2) she indicated in August of 2018 that she had no further interest in chronic pain management visits (AR at 1231); (3) she declined to continue to take Naltrexone because of the cost; and (4) she declined further evaluation of reported neck pain (AR at 1307). The record also contains notes of fatigue, but such mentions are generally brief without elaboration. (AR at 1065, 1124, 1089, 1167, 1197.) Plaintiff does not cite to, nor did this court's review reveal, any records showing that Kauzter ever sought treatment for this fatigue.

On July 3, 2019, ALJ Ellis issued a written decision, analyzing Kautzer's alleged disability under the five-step sequential evaluation process set forth by the Social Security Administration. (*See* AR at 108-18.) At step one, the ALJ concluded that Kautzer had not engaged in substantial gainful activity since her alleged onset date. (AR at 110.) At step two, the ALJ found that Kautzer suffered from the following severe impairments: "Degenerative Disc Disorder, Depression, Somatic Dysfunction, Fibromyalgia (also referenced in this record as Central Sensitization Syndrome), Chronic Fatigue Syndrome, and Myofacial Pain." (AR at 110.)

Then, at step three, ALJ Ellis considered Kautzer's mental impairments against the criteria in listing 12.04 for depressive, bipolar and related disorders. (AR at 111.) As for

5

Kautzer's physical impairments, the ALJ explained that she had "examined and considered all listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 with specific attention to listing 1.04 [disorders of the spine]." (AR at 112.) Ultimately, ALJ Ellis concluded that Kautzer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR at 110.)

Proceeding on to step four, ALJ Ellis concluded that Kauzter had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> Stand or walk for no more than four hours during an eight-hour work day; would need to get up and move around for two to three minutes at the work station if sitting for more than an hour; can only frequently climb ladders, ropes, or scaffolds; can only frequently balance, kneel, crouch, or crawl; can understand, remember, and carry out only simple instructions but not moderately to highly complex or detailed instructions; can have only occasional interaction with supervisors and coworkers, but should work away from the general public; and can tolerate simple changes in daily routine.

(AR at 112.)

ALJ Ellis explained that she gave partial weight to the opinions of state agency Drs. Shaw and Walcott, but that she added *extra* postural limitations based of Kautzer's subjective allegations of pain, muscle cramping, and fatigue. (AR at 115.) The opinion of state agency psychologist Dr. Fitzgerald was given significant weight, as the ALJ found that the restrictions included were well-supported by the medical evidence and the claimant's own testimony. (AR at 115-16.) However, the ALJ discounted PA-C Brown's and Dr. Roe's opinion.

As for PA-C Brown's opinion, ALJ Ellis assigned it little weight, noting that his examination was limited, that he was not active in her treatment, and that there was limited support in the record for the limitations he included. (AR at 116.) Finally, the ALJ concluded that the opinion of Dr. Roe was "helpful in [her] determination of the claimant's residual functional capacity," however, she discounted it for various reasons. (AR at 116.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and ensure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

I. **Opinion Evidence**

In assessing the weight to be given to an opinion not entitled to controlling weight, an ALJ must consider the following factors: the length, frequency, nature and extent of the treatment relationship; the source's area of specialty; the degree to which the opinion is supported by relevant evidence; and the degree to which the opinion consistent with the record as a whole. 20 C.F.R. § 404.1527c(c).[3] Social Security Ruling 96-6p explains that the regulations "provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p.

Here, plaintiff argues that the ALJ erred in assessing the weight to be given to the opinions of Dr. Roe and PA-C Brown. As for Dr. Roe's opinion, plaintiff complains that the ALJ erred in giving it lesser weight than Dr. Fitzpatrick's opinion, which she accorded significant weight. Plaintiff appears to suggest that Dr. Roe's opinion was entitled to greater weight simply because he personally examined Kauzter, while Dr. Fitzpatrick did not. But the treating relationship is but one factor to be considered, and both the ALJ and

---

[3] 20 C.F.R. § 404.1527 applies only to claims, such as the present one, filed before March 27, 2017. Under this regulation, only opinions that are given controlling weight are those from courses who have an ongoing treatment relationship with the claimant. Plaintiff does not here argue that any of the medical opinions in the record are entitled to controlling weight. In particular, the only opinion from a treating source is from PA-C Brown, who as a certified physician's assistant did not qualify as a "medical source" and therefore could not be given controlling weight under the treating physician rule. *See* SSR 6-3p (rescinded); SSR 96-5p (rescinded).

Dr. Fitzpatrick offered numerous other credible reasons to discount Dr. Roe's opinion.[4]

In particular, Dr. Fitzpatrick explained that she based her RFC finding -- which was less limiting than that proposed by Dr. Roe -- on: (1) the results of the objective tests conducted by Dr. Roe; (2) her conclusion that the longitudinal medical record did not reflect significant psychological symptoms, lacked relevant prescriptions, and did not even contain complaints of significant psychological symptoms; and (3) Kautzer's activities of daily living. (AR at 199-200.) Likewise, the ALJ made the following observations regarding Dr. Roe's opinion: (1) it was based largely, if not entirely, on Kautzer's subjective reports of her symptoms and history; (2) Dr. Roe made some inconsistent observations in his evaluation, stating that Kautzer both admitted and denied her depression; (3) Dr. Roe opined as to limitations based on plaintiff's physical conditions (and thus outside of his specialty as a psychologist); and (4) Dr. Roe's opinion was inconsistent with Kautzer's treatment records and the evidence as a whole. Overall, these reasons are consistent with the regulatory factors and support the ALJ's decision to discount Dr. Roe's opinion. Plaintiff advances two specific arguments against the ALJ's discussion, which the court addresses below, but does not find persuasive.

First, plaintiff suggests that it is improper for an ALJ to discount a psychologist's

---

[4] Plaintiff's counsel has apparently previously advanced a similarly flaws argument before the Eastern District Court of Wisconsin. *Ruenger v. Saul*, No. 19-CV-1160, 2020 WL 4192344, at *4 (E.D. Wis. July 21, 2020) ("Ruenger also argues that the ALJ should have given Dr. Weber's opinion greater weight than Dr. Rozenfeld's because Dr. Weber was an examining source and Dr. Rozenfeld was not. This is an incorrect statement of the law, which does not have a blanket requirement that an ALJ credit an examining source over a non-examining one.") (internal citation omitted) (citing *Givens v. Colvin*, 551 F. App'x 855, 860-61 (7th Cir. 2013)).

opinion for being based on subjective reports.[5] On the one hand, it is true that, because "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist," such subjective reports as filtered through the lens of a trained physician are not to be excluded. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Still, the regulations do specify that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Regardless, it is not entirely clear that the ALJ *did* discount Dr. Roe's opinion for relying on Kauzter's subjective statements. She simply noted in her discussion of his opinion that "[i]t is apparent that this evaluation was based largely, if not entirely, on the claimant's subjective reports of her symptoms and history," and did not specify whether that was a factor weighing for or against his opinion. (AR at 116.) Thus, the ALJ's (correct) observation as to the basis of Dr. Roe's opinion is not error.

Second, the plaintiff also faults the ALJ for discounting Dr. Roe's opinion for including an evaluation of Kautzer's physical impairments as well as her mental ones. But any conclusions regarding Kautzer's physical limitations would fall outside of Dr. Roe's area of expertise as a psychologist, which is a permissible reason for an ALJ to discount them. *See Gibbons v. Saul*, 801 F. App'x 411, 416 (7th Cir. 2020) (holding that an "ALJ may discount opinions that are inconsistent or fall outside the doctor's expertise").

---

[5] Plaintiff raised this argument in a different portion of her brief, but it is more properly considered here. (*See* Pl.'s Br. (dkt. #25) 13.)

The ALJ likewise offered various legitimate reasons to discount PA-C Brown's opinion. Plaintiff perfunctorily argues that the ALJ did not consider Kautzer and Brown's treatment history, and therefore erred. But ALJ Ellis *did* acknowledge that PA-C Brown had previously treated Kautzer, but she discounted his opinion based on the fact that his examination was limited, that he was not active in her treatment, and that there was limited support in the record for the limitations he included. (AR at 116.) These are all perfectly valid reasons to discount his opinion, and as such the ALJ properly assessed PA-C Brown's opinion.

## II. Listing Level Impairment

Plaintiff also argues that the ALJ erred in assessing whether Kautzer's impairments met or equaled a listing level impairment. In particular, she argues that the ALJ failed to comply with Social Security Ruling 14-1p in assessing Kautzer's CFS. As discussed below, the court finds that the remand is not appropriate as the plaintiff fails to show now that her CFS equals all the criteria for a listing level impairment and because she failed to allege even that CFS was a severe impairment, let alone a listing level impairment, at the administrative level.

An ALJ's consideration of the listings at step three "streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). *See also* 20 C.F.R. § 416.925(a) (*"What is the purpose of the Listing of Impairments? . . .* For adults, it describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any

11

gainful activity, regardless of his or her age, education, or work experience."). Thus, if a claimant's impairment meets or equals a listing, she is presumptively disabled and the ALJ does not proceed to steps four or five of the sequential analysis. 20 C.F.R. § 416.920(d).

Social Security Ruling 14-1p provides guidance on how to consider CFS at step three:

> CFS is not a listed impairment; therefore, we cannot find that a person with CFS alone has an impairment that meets the requirements of a listed impairment. However, we will compare the specific findings in each case to any pertinent listing (for example, listing 14.06B in the listing for repeated manifestations of undifferentiated or mixed connective tissue disease) to determine whether medical equivalence may exist. Further, in cases in which a person with CFS has psychological manifestations related to CFS, we must consider whether the person's impairment meets or equals the severity of any impairment in the mental disorders listings.

SSR 14-1p. Plaintiff interprets this ruling to mean that an ALJ "must consider an equaling of listing 14.06B and consider whether, in conjuncture with the mental impairments, the claimant's CFS enhanced the severity of the mental impairments." (Pl.'s Br. (dkt. #25) 9.) Plaintiff then argues that a prima facie case for listing 14.06B was met, but complains that the ALJ failed to specifically consider that listing at step three.

An ALJ's failure to mention the listings he or she is considering by name, combined with a "perfunctory analysis," may require remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). However, "even if the ALJ does not offer such an analysis, we do not reverse if the claimant fails to show that he meets the criteria for that listing." *Sosinski v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020) (citing *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999); *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004).

12

The criteria for Listing 14.06B are:

> Repeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404 Subpart P, Appendix 1, Listing 14.04B.  Here, plaintiff has presented some evidence of fatigue, but the mentions of it in the medical record are generally brief and do not indicate that such fatigue was "severe."  Moreover, she has failed to offer *any* evidence of fever, malaise, or involuntary weight loss, nor has she presented evidence that she has symptoms or signs that are medically equivalent.  As for the three options for marked limitations, plaintiff primarily cites to the opinion of Dr. Roe which found that Kautzer had marked limitations in social functioning and concentration, persistence, and pace.  However, as discussed above the ALJ properly discounted this opinion.  (AR at 116.)  Moreover, the ALJ concluded that Kautzer had only *moderate*, not marked, limitations in interacting with others and concentrating, persisting, or maintaining pace.  (AR at 111.)  These findings are supported by substantial evidence in the record, including the opinions of Dr. Fitzpatrick and the two state agency psychologists, all of whom found that Kautzer had no more than moderate limitations.  Finally, both state agency doctors opined generally that Kautzer's impairments did not meet or medically equal a listing, and plaintiff

proffered no medical opinion to the contrary.[6] Thus, the ALJ's consideration of the listing level requirements does not warrant remand. *See Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("Two state-agency physicians concluded that Knox's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary. In light of the medical evidence, the ALJ's failure to refer to a specific listing at step three is not a ground for remand in this case.").

This is especially true as plaintiff conceded at the administrative level that no listing had been met. In her pre-hearing brief, she specifically stated that she was not alleging that her impairments met or equaled any listing. (AR at 540 ("The claimant alleges that no Listing has been met.").) Indeed, she did not even allege that CFS was a severe impairment. (AR at 539.) And at the hearing she made no argument that plaintiff had a listing level impairment (AR at 128-65), nor did she argue any differently on review to the Appeals Council (AR at 1-5, 321-23). It is the claimant who bears the burden of proving that her impairments meet or equal the criteria specified by a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). And here, because plaintiff was represented by counsel, she is "presumed to have made [her] best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Of course, "the failure to assert an argument at the Appeals Council does not operate as a waiver of that claim." *Shramek v. Apfel*, 226 F.3d 809, 811

---

[6] According to plaintiff, "[a]ny argument that the state agency psychologists found that Kautzer did not equal the listing has no merit. The state agency never found that Kautzer had CFS. . . . Without finding that the condition even applied it is difficult to believe that either the physical or mental health consultant considered the equaling of 14.06." (Pl.'s Br. (dkt. #25) 13.) This argument lacks sense. If the state agency consultants did not even conclude that Kautzer suffered from CFS, it is under to understand how they could possibly conclude that her CFS was so severe that it was presumptively disabling.

(7th Cir. 2000). Nevertheless, plaintiff's failure to raise this issue at the administrative level, combined with her failure to show that her CFS meets or equals a listing level requirement, further cuts against remand. *See Hendricks v. Astrue*, No. 1:08-cv-376, 2009 WL 648610, at *8 (S.D. Ind. Mar. 11, 2009) ("the ALJ need not hypothesize about every possible listing that Mr. Hendricks may satisfy, particularly in this case where Mr. Hendricks was represented by counsel at the hearing" and counsel "did not present any evidence directly tailored to any of the listings that the ALJ allegedly ignored"); *Levins v. Astrue*, No. 09-C-1067, 2010 WL 1881452, at *6 (E.D. Wis. May 10, 2010) ("To [remand to reconsider listing not initially alleged] would invite claimants to strategically sandbag before the ALJ by explicitly stating that they are alleging disability under only a single Listing only to later allege, should the ALJ's decision be unfavorable, that remand is required because of the ALJ's failure to discuss the potential of medical equivalence of an arguably relevant Listing.").

### III. Residual Functional Capacity/Subjective Symptoms

Plaintiff's final argument is that the ALJ failed to properly evaluate Kautzer's RFC, primarily arguing that she improperly assessed Kautzer's subjective reports of pain and fatigue. When a claimant's statements regarding the severity of his symptoms "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. Case law emphasizes a reviewing court may reverse a credibility determination "only if it is so lacking in explanation or support" that it is found to be "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting *Elder v.*

*Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2009)).

Here, the ALJ broadly considered Kautzer's subjective reports, but ultimately did not fully credit them on the grounds that they were not entirely consistent with the medical evidence in the record. (AR at 113.) The ALJ specifically noted that Kauzter reported fatigue, an indeed partially credited them by adding certain postural limitations to her RFC. (*See* AR at 115 (explaining that she added "extra postural limitations, mostly based on the claimants repeated subjective allegations of back pain, general pain, and muscle cramping and fatigue).) Plaintiff complaints that the ALJ did not cite specifically to plaintiff's reports that her lack of energy affected her daily activities. However, there is no requirement that an ALJ conduct a "point-by-point credibility assessment" of a claimant's testimony, *McCurrie v. Astrue*, 401 F. App'x 145, 149 (7th Cir. 2010), or "specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). Plaintiff additionally faults the ALJ for referencing Kauzter's conservative treatment, but this is an entirely permissible reason to discount Kauzter's allegations. *See* SSR 16-3p ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); *Coleman v. Astrue*, 269 F. App'x 596, 603 (7th Cir. 2008) (ALJ has "solid grounds" for not believing claimant's statements regarding limiting effects of his pain where claimant fails without legitimate excuse to comply with treatment). For all these reasons, the court finds that the ALJ did not err in her assessment of Kauzter's subjective reports of her symptoms.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi Acting Commissioner of Social Security, is AFFIRMED and plaintiff Susan Kautzer's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 14th day of September, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge